O
JS-6

cc: order, docket, remand letter to Los Angeles Superior Court, North District, Antelope Valley Courthouse, Lancaster, No. MC 024111

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

STEVEN EARLY and MELANIE EARLY,

             Plaintiffs,

    v.

NORTHROP GRUMMAN CORP., et al.,

             Defendants

Case No. 2:13-cv-3130-ODW(MRWx)

**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [10]**

## I. INTRODUCTION

Plaintiffs Steven and Melanie Early originally filed their Complaint in Los Angeles County Superior Court asserting negligence and premises-liability claims against Northrop Grumman Corp., and negligence claims against numerous medical providers. The Complaint raises no question of federal law nor alleges diversity of citizenship between the Earlys and Defendants. Nonetheless, Northrop removed the case to this Court on grounds that (1) the medical providers are "fraudulently misjoined" and should therefore be excluded for the purposes of determining diversity, and (2) federal-officer removal is proper under 28 U.S.C. § 1442. (Not. of Removal ¶¶ 13–36.)

The Earlys filed a Motion to Remand contesting both arguments. (ECF No. 10.) Because the Court declines to adopt the doctrine of "fraudulent misjoinder"

and finds that Northrop has failed to satisfy the elements for federal-officer jurisdiction, the Court **GRANTS** Earlys' Motion to Remand.[1]

## II. BACKGROUND

In February 2012, Steven Early worked as a civilian subcontractor for Northrop when the GEM utility truck he was driving struck a metal grate on a dirt roadway at Edwards Air Force Base. (Compl. 7; Mot. 1; Opp'n 1.) Early was ejected from the vehicle and suffered severe neck injuries. (Mot. 1.) He brought suit in state court alleging that Northrop negligently maintained the dirt road and the GEM utility truck. (*Id.* at 7.) In addition, Early asserted negligence claims against the medical providers who treated his injuries. (*Id.* at 10.) Melanie Early alleged loss of consortium. (*Id.* at 11.)

Northrop filed a Notice of Removal based on diversity jurisdiction and federal-officer jurisdiction. Early now moves to remand the case to state court for lack of subject-matter jurisdiction.

## III. LEGAL STANDARD

If an action before a state court could originally have been brought before a federal court, the defendants in the action may remove to a federal court in the same district. 28 U.S.C. § 1441(a). Generally, the removal statute is strictly construed against removal, and the party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). A party may bring a motion for remand whenever it appears a matter is not properly before a federal court. *See* 28 U.S.C. § 1447(c).

## IV. DISCUSSION

Northrop proffers two arguments in support of federal jurisdiction. First, it asks the Court to adopt the doctrine of "fraudulant misjoinder" and disregard the citizenship of the non-diverse medical providers. (Opp'n 3–5.) Second, Northrop

---

[1] Having carefully considered the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

asserts that it was acting under the direction of a federal officer and may therefore remove this case under 28 U.S.C. § 1442. (*Id.* at 6–12.) The Court addresses each argument in turn.

**A. Diversity jurisdiction is lacking**

It is undisputed that diversity does not exist on the face of the Complaint, as both Plaintiffs and the medical providers are California citizens. (Not. of Removal ¶ 14.) Under § 1441(b), an action may not be removed if any of the properly joined and served defendants is a citizen of the State in which such action is brought. 28 U.S.C. § 1441(b). When a matter is removed on diversity grounds, complete diversity "must exist at the time the action is removed to federal court." *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985).

In an effort to find diversity where none exists, Northrop argues that the medical defendants should be ignored because they were procedurally misjoined. (Opp'n 3.) While fraudulent joinder is a well-established exception to the complete-diversity rule, the doctrine of procedural or fraudulent misjoinder is a recent and unwarranted expansion of jurisdiction, one which the Court is not inclined to adopt.

Under the fraudulent-joinder doctrine, a defendant's presence in a lawsuit may be ignored for the purposes of determining diversity if the court finds that the plaintiff either fails to state a claim against that defendant or fraudulently states jurisdictional facts. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983). Northrop does not argue fraudulent joinder, nor does fraudulent joinder appear to be at issue. Instead, Northop argues that there is fraudulent *misjoinder*.

Fraudulent misjoinder is a considerably broader and more nebulous exception to the complete-diversity rule. First articulated by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, fraudulent misjoinder purportedly occurs when a plaintiff asserts viable claims against both diverse and non-diverse defendants, but there is "no real connection" between the two sets of transactions such that joinder is so

1 "egregious as to constitute fraudulent joinder." 77 F.3d 1353, 1360 (11th Cir. 1996). The Eleventh Circuit did not articulate the point at which joinder becomes "egregious" other than to say that "mere misjoinder is [not] fraudulent joinder." *Id.* at 1360.

Contrary to Northrop's assertion, fraudulent misjoinder has received a tepid response outside of the Eleventh Circuit. Although the Fifth Circuit has discussed the doctrine approvingly, the Ninth Circuit and most other circuits have not adopted the doctrine. *Palmer v. Davol, Inc.*, Nos. 07-md-1842-ML, 08-cv-02499-ML, 2008 WL 5377991, at *2 (D.R.I. Dec. 23, 2008) (collecting cases); *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co.*, 24 F. App'x 727, 729 (9th Cir. 2001). District courts in the Ninth Circuit have gone further by rejecting the doctrine outright. *See*, *e.g.*, *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127–28 (E.D. Cal. 2004); *HVAC Sales, Inc. v. Zurich Am. Ins. Grp.*, No. C-04-03615 RMW, 2005 WL 2216950, at *5–6 (N.D. Cal July 25, 2005).

The Court declines to adopt fraudulent misjoinder here. In short, the doctrine raises more questions than answers. Even within the Eleventh Circuit it is unclear when "mere misjoinder" becomes so "egregious" to constitute fraudulent misjoinder. *See Osborn*, 341 F. Supp. 2d at 1127. And some courts don't require the joinder to be egregious at all. *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004). Likewise, courts disagree about whether state or federal law should apply in determining the propriety of joinder. *Osborn*, 341 F. Supp. 2d at 1128.

Judicial prudence also cautions against adopting an additional exception to the complete-diversity rule. It is axiomatic that removal under § 1441 should be narrowly construed and that any doubts are resolved in favor of remand. *Durham*, 445 F.3d at 1252. Fraudulent misjoinder flips this maxim on its head by making cases removable that by § 1441's plain terms should not be, effectively increasing the jurisdiction of federal courts beyond what the rules envision. Absent Congress amending the rules or a contrary interpretation by the Supreme Court or Ninth Circuit, this Court is not compelled to adopt the doctrine of fraudulent misjoinder.

Although the Court declines to adopt fraudulent misjoinder, it would not be helpful to Northrop even if it applied. Under federal law, defendants may be joined if the claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences, and share any common question of law or fact. Fed. R. Civ. P. 20. The Ninth Circuit construes Rule 20 liberally to promote trial efficiency and prevent duplicative litigation. *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). Indeed, Rule 21 allows even a court to sua sponte join an appropriate party. Fed. R. Civ. P. 21. California's joinder statute largely parallels Rule 20 but with a key departure—a plaintiff may join defendants even where the plaintiff is in doubt as to which defendant caused her injuries. Cal. Civ. Proc. Code § 379(c).

Under either federal or state law, the Court finds that the medical-provider Defendants are properly joined. Steven Early suffered serious injuries that are the subject matter of this suit. (Compl. 7.) He asserts that Northrop and the medical providers are liable for injuries he suffered during the initial accident and subsequent treatment. (*Id.* at 7, 10.) Not only do Early's injuries arise out of the same incident, but the cause (and therefore liability) of his injuries cannot be determined without the presence of both Northrop and the medical providers.

Moreover, most courts that have applied the fraudulent misjoinder doctrine hold that state joinder law should govern, for the simple reason that the plaintiff brings suit in state court and the question is whether defendants were misjoined in the first place. *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 381 (S.D.N.Y. 2006) (collecting cases). Northrop does not argue otherwise, but instead incorrectly states that California's joinder statute matches federal standards. (Opp'n 5.) Not so. California's joinder law is considerably broader, expressly authorizing joinder in situations like the one here where a plaintiff alleges injury by successive tortfeasors. *See Landau v. Salam*, 4 Cal. 3d 901, 906–07 (1971) (upholding joinder under section 379(c) where plaintiff alleged "(1) an injury, (2) negligence by successive tortfeasors,

and (3) doubt as to which is liable").

It is hard to imagine a case that better reflects the twin purposes of joinder—trial efficiency and ensuring that the same issues aren't litigated more than once. Additionally, severing Northrop and the medical providers could result in inconsistent verdicts, such as both being separately found liable for all of Early's injuries. In sum, the Court declines to manufacture diversity jurisdiction where there is none.

### B. Northrop fails to satisfy the elements required for federal-officer removal

As discussed above, removal under § 1441 is strictly construed with any doubts regarding the right to removal resolved in favor of remand. *Durham*, 445 F.3d at 1252. In contrast, federal-officer removal under § 1442(a)(1) should be "liberally construed to give full effect to the purposes for which [it was] enacted." *Id.* (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). "[W]hen federal officers and their agents are seeking a federal forum, [courts] are to interpret section 1442 broadly in favor of removal." *Id.* Furthermore, removal under § 1442 is not subject to the well-pleaded complaint rule. *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). Rather, "the federal-question element is met if the defense depends on federal law." *Id*.

To satisfy § 1442 under Ninth Circuit case law, a party must demonstrate that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims, and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251 (citing *Acker*, 527 U.S. at 431, and *Mesa v. California*, 489 U.S. 121, 124–25 (1989)).

The casual-nexus element requires more than mere compliance with a federal regulation by a private party. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007). Rather, it entails "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* To satisfy this requirement, the defendant must show a causal connection between the charged conduct and asserted official authority. *Acker*, 527 U.S. at 431. But a defendant must show more than that "the relevant acts occurred under the general auspices of a federal office or officer." *Freiberg v.*

1  *Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1152 (D. Colo. 2002)
2  (quoting *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 947 (E.D.N.Y 1992). Rather, the
3  federal officer must have "direct and detailed" control over the defendant, and the
4  defendant "must demonstrate that the acts for which they are being sued . . . occurred
5  *because of* what they were asked to do by the Government." *Ryan*, 781 F. Supp. at
6  947; *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (emphasis in original). Further,
7  the removing party must "by direct averment exclude the possibility that [the state
8  action] was based on acts or conduct of his not justified by his federal duty." *Mesa*,
9  489 U.S. at 132.

10  Northrop points to a general safety provision in its Commercial Test Agreement
11  (CTA) with the Air Force in an attempt to show federal direction. (Opp'n 9.) The
12  boilerplate provision states that Northrop must comply with applicable Air Force
13  standards and seek clearance before making certain alterations at their facility located
14  at Edwards Air Force Base. (Opp'n 9.) According to Northrop, the CTA shows that
15  "whatever actions Northrop took (or did not take) to maintain the dirt path on which
16  Plaintiff's accident occurred were governed by" federal regulations. (*Id.*) And
17  regarding maintenance of the GEM utility truck, Northrop concedes that under the
18  CTA it was responsible for inspecting and maintaining its own equipment and
19  property. (*Id.* at 10.) Even so, Northrop contends that such maintenance was subject
20  to direct federal regulation because the CTA requires them to have an "approved
21  written Environmental, Health and Safety Program" to cover work performed at their
22  facility. (*Id.*)

23  It is telling that Northrop cannot point to a single decision it actually made
24  regarding maintenance of the dirt road or GEM utility truck, or demonstrate how any
25  such decision was directed by the CTA. The crux of Northrop's argument is that
26  because any actions it hypothetically could have taken were required to meet the CTA
27  guidelines, there is a causal nexus between whatever it did or did not do and the
28  conduct complained of. But Northrop has the burden to exclude the possibility that

whatever acts it took or did not take were not justified by federal direction. *Mesa*, 489 U.S. at 132. Merely pointing to a general safety provision does not exclude this possibility. In short, although the CTA shows that Northrop acted under the general auspices of federal direction, it fails to demonstrate that the Air Force exercised direct and detailed control over Northrop. Moreover, Northrop fails to demonstrate that the alleged incident occurred because of that federal control. But in an effort to convince the Court otherwise, Northrop points to a number of cases that actually illustrate the weakness of their position.

In *Reaser v. Allis Chambers Corp.*, plaintiffs brought a failure to warn claim against multiple defendants who supplied asbestos-containing products for Navy submarines. No. CV 08–1296–SVW (SSx), 2008 WL 8911521, at *1 (C.D. Cal. Jun. 23, 2008). The products were built to meet precise specifications supplied by the Navy, and the Navy maintained complete control over the placement and content of the warnings. *Id.* at *3. Because any alleged failure to warn "resulted from the Navy's prohibitions and/or control over any such warning," the court found the causal nexus element satisfied. *Id.* at *5. Here, Northrop fails to show that any acts or omissions regarding maintenance of the road or GEM utility vehicle were controlled by the Air Force. At most, the CTA compels Northrop to comply with various Air Force safety standards; how compliance with these standards had anything to do with Early's injuries is unclear.

Northrop's reference to *McGee v. Arkel Int'l, LLC*, is equally unavailing. 716 F. Supp. 2d 572 (S.D. Tex. 2009). *McGee* concerned the death of an army serviceman who died in Iraq while operating a power washer connected to an improperly grounded generator. Defendants contracted with the army to perform maintenance on 16 generators, but they were not authorized to perform any work on the generator at issue. *Id.* at 577. The causal nexus element was easily satisfied because defendants' failure to maintain the generator was the direct result of being prevented from doing so by a military contract. *Id.* Unlike the contract in *McGee*, the CTA did not prevent

Northrop from maintaining the dirt road or providing a working seatbelt in the GEM utility truck. Although the CTA required Northrop to follow certain guidelines and receive permits before making modifications, Northrop makes no effort to show that it even attempted to make any modifications or that Early's injuries occurred because they followed the CTA guidelines. (Opp'n 10.)

A contract with the government is not a one-way ticket to federal court. While the Court is mindful that federal-officer removal is construed broadly, there must still be a causal nexus between the charged conduct and the actions directed by the federal official. *Acker*, 527 U.S. at 431. The CTA does not demonstrate that a federal official directed Northrop's decisions regarding maintenance of the dirt road or GEM utility trucks. Thus, Northrop fails to satisfy the causal-nexus element required for federal-officer removal jurisdiction.

Because Northrop has not established a necessary element for federal-officer jurisdiction, the Court declines to opine whether the other two elements have been satisfied.

## V. CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Remand is **GRANTED**.

**IT IS SO ORDERED.**

July 24, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**